## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE BLANCHARD II,                          :        Civil No. 3:23-cv-159
                                            :
            Plaintiff                       :        (Judge Mariani)
                                            :
     v.                                     :
                                            :                FILED
                                            :             SCRANTON
DIPTI AMIN, *et al.*,                       :
                                            :            FEB 0 5 2024
            Defendants                      :
                                                     PER_____
                                                        DEPUTY CLERK

### MEMORANDUM

Plaintiff Jose Blanchard ("Blanchard"), an inmate formerly in the custody of the

Pennsylvania Department of Corrections ("DOC"), filed this *pro se* action asserting

constitutional claims under 42 U.S.C. § 1983 and medical malpractice claims under

Pennsylvania law.[1]  (Doc. 1).  The matter is proceeding via an amended complaint.  (Doc.

33).  Named as Defendants are Dipti Amin, D.D.S., dental hygienist Carmen Katchko,

healthcare administrator Lea Martin, superintendent Kevin Ransom, the Department of

Corrections ("DOC"), (collectively, the "DOC Defendants"), Wellpath, LLC, and John and

Jane Doe.  Before the Court is the DOC Defendants' motion (Doc. 41) to dismiss or, in the

alternative, for summary judgment.  Pursuant to Federal Rule of Civil Procedure 12(d), the

motion will be treated as one for summary judgment, and disposed of as provided in Rule

---

[1]     Blanchard has been released from custody.  (*See* Doc. 47).

56, only with respect to the issue of exhaustion of administrative remedies.[2]  The remaining claims will be addressed under Rule 12(b).  For the reasons set forth below, the Court will grant the motion.  The Court will also dismiss the action against the John and Jane Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m).

## I.  **Allegations of the Amended Complaint**

Blanchard's claims are grounded in the dental care he received at the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas").  (Doc. 33).

Prior to his incarceration at SCI-Dallas, Blanchard was housed at the State Correctional Institution, Camp Hill, Pennsylvania ("SCI-Camp Hill").  On August 23, 2019, the Dental Department at SCI-Camp Hill discovered cavities in Blanchard's teeth.  (*Id.* ¶ 16). X-rays revealed multiple cavities and an erupted lower left third molar (wisdom tooth).  (*Id.* ¶ 17).  The dentist at SCI-Camp Hill prescribed pain medications and stated that the dentist at Blanchard's next facility would determine how to treat the tooth.  (*Id.* ¶ 18).  Blanchard alleges that this wisdom tooth became infected and caused severe pain.  (*Id.* ¶ 21).  He asserts that Tylenol and antibiotics provided no relief.  (*Id.* ¶ 22).

---

[2]     On July 25, 2023, the Court issued an Order apprising the parties that the motion to dismiss would be treated as one for summary judgment with respect to the issue of exhaustion of administrative remedies.  (Doc. 45).  Because Defendants raised the issue of exhaustion of administrative remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (Doc. 45).

On August 14, 2020, Blanchard was scheduled for another x-ray but could not go due to the covid-19 policy. (*Id.* ¶ 23).

On August 18, 2020, Defendant Amin (a dentist at SCI- Dallas) and Defendant Katchko (a dental hygienist at SCI-Dallas) performed surgery on the tooth; however, Blanchard alleges that they performed surgery on the wrong tooth. (*Id.* ¶ 25). Defendant Amin allegedly told Blanchard not to tell anyone about the surgery. (*Id.* ¶ 26).

On October 2, 2020, at a follow-up appointment, Blanchard informed the medical department that he did not receive any relief from the surgery. (*Id.* ¶ 29). During this encounter, Defendant Amin also allegedly informed Blanchard that the DOC does not pay for permanent teeth. (*Id.*).

On October 27, 2020, Blanchard submitted a DC-135A, Inmate Request to Staff Member, and reported experiencing agonizing pain and symptoms of delirium. (*Id.* ¶ 31).

On October 28, 2020, Blanchard submitted a DC-135A to the medical department, wherein he requested dental care for the infection on the right side of his mouth. (*Id.* ¶ 32). Blanchard alleges that he was denied dental treatment. (*Id.* ¶ 33).

On October 30, 2020, Defendant Katchko went to Blanchard's cell for a dental sick call appointment. (*Id.* ¶ 34). Defendant Katcho prescribed pain medication and allegedly stated, "Mrs. Amin says there's no more she can do for you." (*Id.* ¶ 35). Defendant Amin observed the medical encounter and allegedly advised Blanchard to take Tylenol because he was on a blood thinner. (*Id.* ¶¶ 34, 36).

Blanchard alleges that Defendants Amin and Katchko exhibited "deliberate recklessness" prior to the dental surgery. (*Id.* ¶ 41). He further alleges that Defendant Amin's actions were egregious and deprived him of his constitutional rights. (*Id.* ¶ 42).

On or about October 10, 2020, Blanchard submitted grievance number 894470 related to the dental procedure. (*Id.* ¶ 45). On October 22, 2020, a DOC official rejected grievance number 894470 in accordance with DOC Policy because the statement of facts exceeded two pages. (*Id.* ¶¶ 46, 55). On October 25, 2020, Blanchard submitted a supplement to grievance number 894470. (*Id.* ¶ 55).

On October 25, 2020, Blanchard submitted a new grievance form (grievance number 896500). (*Id.* ¶ 54). On October 29, 2020, a DOC official denied the grievance because it was not filed within fifteen working days after the event upon which the claim is based. (*Id.* at p. 28). The DOC official informed Blanchard that: "[t]his is also the same grievance as 894470. If you did not agree with the decision of that grievance then you had the right to appeal to the facility manager." (*Id.*). Blanchard appealed the denial of grievance number 896500 to the SCI-Dallas Facility Manager, Defendant Ransom. (*Id.* at p. 29). In the appeal, Blanchard stated that "Grievance #896500 'is also the same grievance as 894470.'" (*Id.; Id.* ¶ 59). Upon review, Defendant Ransom upheld the grievance coordinator's decision that the grievance was not filed within fifteen working days after the alleged underlying incident. (*Id.* at pp. 29-30). Blanchard then submitted a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (*Id.* ¶ 64). On January 29, 2021,

SOIGA dismissed the final appeal as untimely, and because Blanchard failed to provide the required documents for a proper appeal to final review. (*Id.* ¶ 67; *Id.* at p. 33).

On April 16, 2021, Blanchard submitted grievance number 924941, wherein he alleged that Defendant Amin failed to provide proper dental care during a scheduled appointment on April 13, 2021. (*Id.* at p. 19). Blanchard states that the purpose of grievance number 924941 was to explain the past events "once again." (*Id.* ¶ 77). On initial review, Defendant Martin denied grievance number 924941, finding that Blanchard's dental care has been appropriate, there has been no intentional wrongdoing by Defendant Amin or any other dental personnel, and that plans were already made for his future dental procedures. (*Id.* at p. 21). Blanchard appealed that decision to the SCI-Dallas Facility Manager, Defendant Ransom. (*Id.* at pp. 22-23). Defendant Ransom denied the appeal, and informed Blanchard that:

> Any grievance issue that has been or is currently being addressed will not be re-addressed in a subsequent grievance. Any concern disputing previous grievances, initially review responses, appeal decisions, or actions of staff members who rendered those decisions should be addressed through the appeal process. Your accusations, other than the date of April 13, 2021, regarding dental visits will not be addressed at my level. These allegations were addressed in the rejection of 896500, appeal to FM and to SOIGA.

(*Id.* at p. 24). In addressing Blanchard's complaints regarding his appointment on April 13, 2021, Defendant Ransom upheld the initial response decision, and noted that Blanchard was scheduled for an oral surgery clinic and was provided Tylenol. (*Id.*). Blanchard filed an appeal with SOIGA on June 26, 2021. (*Id.* ¶ 87; *Id.* at p. 25). On July 27, 2021, SOIGA

informed Blanchard that his appeal was incomplete and advised him to provide a legible

copy of his initial grievance within fifteen days from the date of the notice.  (*Id.* at p. 26).

## II.   Rule 56 Motion

### A.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists.  *Anderson*, 477 U.S.

at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### B.    Statement of Undisputed Facts[3]

From August 2019 to January 2021, Blanchard filed five grievances—numbers 850789, 894470, 896500, 923276, and 924941.  (Doc. 52 ¶10).

### Grievance Number 850789

On February 18, 2020, the Facility Grievance Coordinator at SCI-Dallas received grievance number 850789 submitted by Blanchard.  (*Id.* ¶ 11).  This grievance does not concern the dental procedure performed by Defendant Amin and Defendant Katchko.  (*Id.* ¶ 12).  This grievance concerned glasses that Blanchard ordered, but never received, at SCI-Camp Hill.  (*Id.* ¶ 13).

---

[3]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background herein derives from the DOC Defendants' Rule 56.1 statement of material facts. (Doc. 52).  Blanchard's 21-paragraph responsive fact statement (Doc. 81) fails to correspond to the 36-paragraph concise statement of material facts filed by the DOC Defendants (Doc. 52).  The averments of Blanchard's responsive fact statements are entirely independent of those in the DOC Defendants' filing and does not correlate in any meaningful way to the paragraphs in the DOC Defendants' statement.  In sum, Blanchard's document does not comply with Local Rule 56.1's requirement of parity between the two filings.  Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by the DOC Defendants. *See* LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance").

### Grievance Number 894470

On October 16, 2020, the Facility Grievance coordinator at SCI-Dallas received grievance number 894470 submitted by Blanchard.  (*Id.* ¶ 14).  This was Blanchard's first grievance related to the dental procedure on October 10, 2020.  (*Id.* ¶ 15).  On October 22, 2020, a DOC official rejected grievance number 894470 in accordance with DOC Policy DC-804, "Inmate Grievance System Procedures Manual", § 1.A.12, because the statement of facts exceeded two pages.  (*Id.* ¶ 16).  This rejection advised Blanchard that, "if [he] would like to shorten the grievance up, [he] can resubmit within 5 working days."  (*Id.* ¶ 17; Doc. 52-1, p. 12).

### Grievance Number 896500

On October 28, 2020, the Facility Grievance Coordinator at SCI-Dallas received a new grievance, grievance number 896500, submitted by Blanchard.  (Doc. 52 ¶ 18).  On October 29, 2020, a DOC official rejected grievance number 896500 in accordance with DC-ADM 804 § 1.A.8, which requires an inmate to file their grievance within fifteen working days after the event upon which the claim is based.  (*Id.* ¶ 19).

Blanchard appealed the rejection of grievance number 896500 to the SCI-Dallas Facility Manager, Defendant Ransom.  (*Id.* ¶ 20).  Defendant Ransom upheld the denial for being filed more than fifteen days after the alleged underlying incident.  (*Id.* ¶ 21).

Blanchard then filed a final appeal to SOIGA, which was postmarked December 21, 2020.  (*Id.* ¶ 22).  On January 29, 2021, SOIGA rejected his final appeal as untimely and for

failing to submit the proper documentation.  (*Id.* ¶ 23).  At this point, the grievance process concluded.  (*Id.* ¶ 24).

### Grievance Number 923276

On April 12, 2021, the Facility Grievance Coordinator at SCI-Dallas received grievance number 923276.  (*Id.* ¶ 25).  This grievance does not concern the dental procedure performed by Defendant Amin and Defendant Katchko.  (*Id.* ¶ 26).  This grievance concerns parole.  (*Id.* ¶ 27).

### Grievance Number 924941

On April 23, 2021, the Facility Grievance Coordinator at SCI-Dallas received grievance number 924941 submitted by Blanchard, in which he accuses Defendant Amin of failing to provide proper dental care during a scheduled appointment on April 13, 2021.  (*Id.* ¶ 28).  Grievance number 924941 is a recounting of the events discussed in grievance number 896500.  (*Id.* ¶ 29).  On May 7, 2021, Defendant Martin denied grievance number 924941 on initial review, finding that Blanchard's account of the events was inaccurate and that plans were already made for his future dental procedures.  (*Id.* ¶ 30).

On May 18, 2021, Blanchard appealed to Defendant Ransom.  (*Id.* ¶ 31).  Defendant Ransom denied any allegations in Blanchard's appeal which were already addressed in the rejection of grievance number 896500.  (*Id.* ¶ 32).  Defendant Ransom proceeded to address Blanchard's accusations surrounding his appointment on April 13, 2021, and found

that Defendant Amin did not fail to provide proper dental care by providing Tylenol.  (*Id.* ¶ 33).

Blanchard then filed an appeal with SOIGA.  (*Id.* ¶ 34).  The appeal did not proceed because Blanchard failed to provide a copy of his initial grievance with the appeal.  (*Id.* ¶ 35).  The copy of the grievance located in the SOIGA file is not legible.  (*Id.* ¶ 36).

## C.   Discussion

The DOC Defendants contend that Blanchard failed to properly exhaust the claims related to grievance number 896500 and grievance number 924941 prior to proceeding to federal court.  (Doc. 42, pp. 10-12).

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It has been made clear that the exhaustion requirement is mandatory.  *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir.

2000) (same).  "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement."  *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules.  *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004).  The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements.  *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78.  A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim.  *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).  A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him.  *See Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).  "An administrative remedy is unavailable when it "operates as a simple dead end[,] ... is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

The DOC employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); *Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys.*, Policy No. DC-ADM 804 ("DC-ADM 804"). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. *Id.* § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals, and again must be submitted within 15 working days of the date of the Facility Manager's decision. *Id.* § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." *Id.* § 1(A)(11).

The DOC Defendants argue that the following two grievances, related to Blanchard's dental treatment at SCI-Dallas, were not properly exhausted—numbers 896500 and 924941. (*See* Doc. 42, pp. 10-12; Doc. 52 ¶¶ 18-24, 28-35).

The first grievance—number 896500—was filed in October 2020. (*See* Doc. 52-1, pp. 17-20).  In this grievance, Blanchard complained that Defendants Amin and Katchko performed cosmetic surgery on the wrong side of his mouth. (*Id.* at p. 20).  He alleged that Defendant Amin performed the surgery based on the X-ray of another individual. (*Id.*). He further alleged that Defendant Amin prescribed Amoxycillin and Acetaminophen. (*Id.*).

Initial review of this grievance was conducted by Grievance Coordinator "K. Fagan" on October 29, 2020. (*Id.* at p. 19).  The Grievance Coordinator denied Blanchard's grievance, explaining that the grievance was not submitted within fifteen working days after the events upon which the claims were based. (*Id.*).

Blanchard appealed the first-level denial to the Facility Manager—Defendant Ransom. (*Id.* at p. 18).  Defendant Ransom upheld the Grievance Coordinator's denial, again finding that the grievance was not filed within fifteen working days after the alleged underlying incident. (*Id.* at p. 17).

Blanchard filed an appeal to SOIGA, which was postmarked December 21, 2020. (Doc. 52-3, p. 5).  On January 29, 2021, SOIGA dismissed his final appeal because it was untimely, and because Blanchard failed to provide the required documents for a proper appeal to final review. (*Id.*).

Blanchard filed the second grievance—number 924941—on April 16, 2021. (Doc. 52-1, pp. 26-34). He complained that Defendant Amin failed to provide proper dental care during a scheduled appointment on April 13, 2021. (*Id.* at pp. 33-34). He further recounted the events discussed in grievance number 896500. (*Id.*).

Initial review of this grievance was conducted by Defendant Martin on May 7, 2021. (*Id.* at pp. 30-32). Defendant Martin denied Blanchard's grievance, finding that Blanchard's dental care has been appropriate, there has been no intentional wrongdoing by Defendant Amin or any other dental personnel, and that plans were already made for his future dental procedures. (*Id.* at p. 21). Defendant Martin ultimately found that "[t]here has been no denial of treatment." (*Id.* at p. 31).

Blanchard appealed the first-level denial to the Facility Manager—Defendant Ransom. (*Id.* at pp. 28-29). Defendant Ransom upheld the denial and denied any allegations in Blanchard's appeal which were already addressed in the rejection of grievance number 896500. (*Id.* at p. 27). Defendant Ransom addressed the additional concerns raised in the appeal regarding his appointment on April 13, 2021, upheld the initial response decision, and noted that Blanchard was scheduled for an oral surgery clinic and was provided Tylenol. (*Id.*).

Blanchard's final appeal to SOIGA was dismissed on procedural grounds on July 27, 2021, for failure to submit legible copies of his initial grievance with the appeal. (*Id.* at p. 26). SOIGA advised Blanchard to provide a legible copy of his initial grievance within fifteen

days from the date of the notice, and that a failure to do so may result in the dismissal of his appeal. (*Id.* at p. 26). Blanchard did not inquire about the status of his SOIGA appeal for almost one year. (Doc. 33 ¶ 89).

Two conclusions can be drawn from this grievance history. First, Blanchard never identified Defendants Ransom or Martin in any of his grievances as committing an act or omission that potentially violated his constitutional rights. Defendant Martin's only involvement in the grievance process was in her role as Facility Grievance Coordinator for the first-level grievance review. Defendant Ransom's only involvement in the grievance process was in his role as superintendent/Facility Manager for the second-level grievance review. Investigating and denying a grievance appeal that alleges inadequate care by medical staff is not equivalent to being deliberately indifferent to a prisoner's serious medical needs. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process"). Blanchard is not excused from administratively exhausting claims against Ransom and Martin—as required by the PLRA—simply because Martin is the Facility Grievance Coordinator, and Ransom is the Facility Manager, who denied relief under DC-ADM 804.

Second, Blanchard never exhausted the claims against Defendants Amin and Katchko in grievance numbers 896500 and 924941. Blanchard did appeal grievance

number 896500 to SOIGA; however, SOIGA dismissed the final appeal as untimely and for failure to submit the proper documentation. (Doc. 52-3, p. 5). Blanchard also appealed grievance number 924941 to SOIGA; however, SOIGA found that the appeal was incomplete based on Blanchard's failure to submit legible copies of the initial grievance with the appeal. (Doc. 52-1, p. 26). Blanchard failure to cure this deficiency. It is clear that Blanchard's final appeals to SOIGA were dismissed on procedural grounds. A prisoner's failure to follow the applicable procedural rules results in a procedural default of the claims, thus barring the prisoner from bringing suit in federal court. *See Spruill*, 372 F.3d at 227-32. In an attempt to excuse his procedural default of grievance number 924941, Blanchard asserts that he was paroled on July 7, 2021, and SOIGA sent their decision to the wrong address after he was paroled. (Doc. 33 ¶ 89; Doc. 80). However, Blanchard also admits that he did not inquire about the status of his appeal and did not follow-up with SOIGA for "about a year." (Doc. 33 ¶ 89). Blanchard has not presented any evidence that administrative remedies were unavailable to him. In sum, neither of the grievances, numbers 896500 or 924941, were properly exhausted and they are procedurally defaulted.

Blanchard has not provided any basis to excuse his failure to exhaust administrative remedies. Consequently, summary judgment must be granted in the DOC Defendants' favor on the procedurally defaulted claims in grievance numbers 896500 and 924941. *See Spruil*, 372 F.3d at 222, 230.

## III.   Rule 12(b)(6) Motion

### A.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the

18

elements a plaintiff must plead to state a claim.  Second, the court should
identify allegations that, because they are no more than conclusions, are not
entitled to the assumption of truth.  Finally, where there are well-pleaded
factual allegations, a court should assume their veracity and then determine
whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a
defendant moves to dismiss it, unless the district court finds that amendment
would be inequitable or futile, the court must inform the plaintiff that he or she
has leave to amend the complaint within a set period of time.

*Id.*

## B.    Discussion

### 1.    Statute of Limitations

The DOC Defendants argue that all claims related to incidents occurring before

January 30, 2021 must be dismissed because they are time-barred by the applicable statute

of limitations.  (Doc. 42, pp. 12-14).

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury actions and state tort medical malpractice claims in Pennsylvania is two years. *See id.*; Pa. Cons. Stat. Ann. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599.

"Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). The Rule provides: an "amendment to a pleading relates back to the date of the original pleading when…the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

Blanchard's claims arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations. Blanchard filed his original complaint on

January 11, 2023.[4]  (Doc. 1).  He filed an amended complaint on June 1, 2023.[5]  (Doc. 33).  The amended complaint contains essentially the same claims as the original complaint, and, therefore, relates back to the time the original complaint was filed.  *See Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) (holding that "the underlying question for a Rule 15(c) analysis is whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint" (internal quotations omitted)).  Absent tolling, it appears that any claims that occurred prior to January 11, 2021 are time-barred.

Section 1983's statute of limitations is subject to tolling.  With respect to prisoner claims, the statute is tolled while the inmate-plaintiff exhausts his administrative remedies.  *See Pearson v. Sec'y Dept. of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").

Blanchard alleges that Defendants Amin and Katcko performed a dental procedure on August 18, 2020.  (Doc. 33 ¶ 25).  Thus, any § 1983 or medical malpractice claims related to this procedure would have to be filed by August 18, 2022.  However, Blanchard

---

[4]    Although the docket states that the complaint was filed on January 30, 2023, this is the date it was received by the Court.  Under the prisoner mailbox rule, the complaint is deemed filed when Blanchard handed it to prison officials for mailing, which was on January 11, 2023.  *See Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) ("The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing.").

[5]    The amended complaint was received on June 9, 2023, but dated June 1, 2023.  *See Pabon*, 654 F.3d at 391 n.8 (discussing the federal prisoner mailbox rule).

did not commence this action until January 11, 2023.  Although some of the actions that

Blanchard complains of occurred more than two years prior to the filing of his complaint, the

statute of limitations would be tolled during the time his exhausted his grievances.  As

stated *supra*, the Court finds that Blanchard failed to properly exhaust his administrative

remedies regarding the claims in grievance numbers 896500 and 924941.  Blanchard's

claims are not tolled by the statute of limitations because he did not properly exhaust his

administrative remedies.  *See Shakuur v. Costello*, 230 F. App'x 199, 201 (3d Cir. 2007)

(finding statute of limitations was not tolled because plaintiff failed to properly exhaust

administrative remedies, thereby affirming district court decision granting a motion to

dismiss on the basis of untimeliness of the complaint).  Because the statute of limitations

was not tolled, Blanchard was required to file any civil complaint regarding the August 18,

2020 dental procedure by August 18, 2022.

Assuming that the claims are not barred by Pennsylvania's controlling statute of

limitations, the Court moves to the merits of Blanchard's claims.

### 2.   Claims against Defendants Martin and Ransom

In order to state an actionable civil rights claim, a plaintiff must plead two essential

elements: (1) that the conduct complained of was committed by a person acting under color

of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity

secured by the Constitution or laws of the United States.  *See Groman v. Township of*

*Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d

22

1135, 1141-42 (3d Cir. 1990).  Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Blanchard fails to identify the particular conduct of Defendants Martin and Ransom that allegedly violated his rights.  There are no allegations that these Defendants participated in, directed, or knew of and acquiesced in any constitutional violations.  This style of pleading is patently inadequate since it fails to allege facts that give rise to a plausible claim for relief against Defendants Martin and Ransom.  Additionally, any attempt by Blanchard to hold Defendants Martin and Ransom liable for the actions of his subordinates is essentially an assertion of respondeat superior liability which seeks to hold

them liable based on their supervisory roles as healthcare administrator and superintendent. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

To the extent Blanchard attempts to hold Defendants Martin and Ransom liable based on their involvement in the grievance procedure, this claim also fails. Courts have routinely held that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Alexander*, 144 F. App'x 924 (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability).

Blanchard also suggests that Defendants Martin and Ransom are liable for failing to provide adequate training and supervision. "[T]he inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the person with whom the [inadequately trained subordinates] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Without such a pattern, a plaintiff must allege that the harm suffered was so "predictable that failure to train the [subordinate] amounted to *conscious disregard*" for his

rights. *Id.* at 71 (emphasis in original).  However, "[w]ithout notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Blanchard has made only conclusory failure to train allegations.  The bare allegations, without further explanation, are insufficient to plausibly allege that Defendants Martin and Ransom failed to adequately train subordinates at SCI-Dallas.  Accordingly, the failure to train claims against Defendants Martin and Ransom will be dismissed.

The Court finds that Blanchard's amended complaint fails to contain any allegations identifying how Defendants Martin and Ransom were personally involved in the alleged constitutional deprivations.  The Court, therefore, will grant the motion to dismiss the claims against Defendants Martin and Ransom for want of personal involvement.

### 3.    The DOC is not a Person

Blanchard has named the Pennsylvania Department of Corrections as a Defendant in this action.  (Doc. 33 ¶ 9).  However, the Department of Corrections is not amenable to suit because it is not a person as required for purposes of § 1983, and it is entitled to immunity under the Eleventh Amendment.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state may not be sued in federal court pursuant to § 1983 and is not a "person" for purposes of that provision).  Eleventh Amendment immunity prevents Blanchard from suing the Department of Corrections as a matter of law.  "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive

department of the Commonwealth, *see* Pa. Stat. Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pennsylvania Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Pennsylvania has not waived this immunity. 42 Pa. Cons. Stat. § 8521(b). Accordingly, the Department of Corrections is not subject to suit and will be dismissed.

### 4.   Eighth Amendment Claim

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v.*

26

*Brennan*, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).  Moreover, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

Assuming that Blanchard's allegations qualify as a serious medical condition for purposes of the Eighth Amendment analysis, the Court must determine whether he has established a deliberate indifference to that need.

Blanchard has not established that Defendants Amin and Katchko were deliberately indifferent to his serious medical needs.  In *Gillespie v. Hogan,* 182 F. App'x 103 (3d Cir. 2006), the defendant dentist negligently removed the tooth of a prisoner, leaving part of the tooth in his gums for more than a year.  *Id.* at 104.  As a result, the prisoner suffered significant pain and hardship while the tooth fragment remained in his mouth.  *Id.* at 105.

The Third Circuit held that the negligent oral surgery did not rise to the level of "deliberate indifference" required for a § 1983 claim.  *Id.*

Similarly, Blanchard's claims do not rise to the level of deliberate indifference.  By Blanchard's own account, he presented to Defendants Amin and Katchko for standard dental treatment.  There is no indication that the actions of Defendants Amin and Katchko were based on an ulterior motive beyond providing routine patient care.  *See Spruill,* 372 F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants). Blanchard has failed to allege that Defendants Amin and Katchko had a culpable state of mind or that allegedly performing surgery on the wrong tooth was intentional.  Blanchard's claims amount to no more than negligent treatment, or possibly gross negligence.  It is well-settled that "mere allegations of malpractice do not raise issues of constitutional import," and Blanchard's claims must fail.  *Lanzaro,* 834 F.2d at 346.  Furthermore, Blanchard does not allege a complete denial of dental treatment or any undue delay in providing treatment. To the contrary, by his own allegations, Blanchard received dental care and treatment by Defendants Amin and Katchko, he underwent x-rays, attended follow-up visits, and received medications.  Regarding any perceived delay in treatment, Blanchard acknowledges that the delay was due to his facility transfers and the COVID-19 pandemic.  (Doc. 33 ¶¶ 19, 23). Blanchard's allegations do not amount to deliberate indifference to a serious medical need. *See Isenberg v. Prasse,* 433 F.2d 449 (3d Cir. 1970) (rejecting a claim that malpractice by a

dentist while extracting teeth constitutes unconstitutional cruel and unusual punishment); *Green v. Dep't of Corr.,* 2012 WL 2354443, *3 (3d Cir. 2012) (finding that the prisoner's claim that the prison dentist accidentally broke his front tooth alleged mere negligence and did not rise to level of deliberate indifference to prisoner's needs); *Gindraw v. Dendler,* 967 F. Supp. 833, 836-38 (E.D. Pa. 1997) (finding that the prisoner's allegation that the defendant dentist extracted the wrong tooth failed to establish a claim of deliberate indifference); *Prince v. Bradshaw,* 2016 WL 1436577, at *2 (E.D. Mo. 2016) (dismissing a deliberate indifference claim, explaining a "mistaken extraction of teeth does not in and of itself establish deliberate indifference, and plaintiff alleges no state of mind that is more blameworthy than negligence, or perhaps gross negligence").  Further, Defendant Katchko, a dental hygienist who knew that Blanchard was under a physician's care, was justified in believing that he was in capable hands.  *See Pearson*, 850 F.3d at 540 n. 4 ("Given that it is the physician with the ultimate authority to diagnose and prescribe treatment for the prisoner, a nurse who knows that the prisoner is under a physician's care is certainly 'justified in believing that the prisoner is in capable hands,' so long as the nurse has no discernable basis to question the physician's medical judgment.") (citation omitted).  There is no indication that the actions of Defendants Amin and Katchko were deliberate or intentional or that they possessed the requisite mental intent to sustain a deliberate indifference claim.  Therefore, the Court will grant Defendants' motion with respect to the Eighth Amendment claim against Defendants Amin and Katchko.

29

Additionally, healthcare administrator Martin and superintendent Ransom are not medical personnel and cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1991). Blanchard has not alleged that these Defendants had reason to believe that his medical providers were mistreating or failing to treat him. *See Spruill*, 372 F.3d at 236.

Blanchard fails to allege facts from which it can reasonably be inferred that the DOC Defendants exhibited deliberate indifference to his medical needs. Therefore, the Court will dismiss the Eighth Amendment inadequate medical care claim against the DOC Defendants.

### 5.    Fourteenth Amendment Claims

#### a.    Substantive Due Process Claim

The DOC Defendants argue that, to the extent Blanchard raises a Fourteenth Amendment substantive due process claim, it must be dismissed because the Fourteenth Amendment claim is based on the same conduct as the Eighth Amendment claim. (Doc. 42, p. 24 n.7).

In adopting the "more-specific-provision-rule" established in *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that

30

specific provision, not under the rubric of substantive due process.' *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219,137 L.Ed.2d 432 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))." *Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010).  Because Blanchard's claims related to his dental care fit squarely within the Eighth Amendment claim, the more-specific-provision rule forecloses any substantive due process claim.  The Court will grant the DOC Defendants' motion on this ground.

### b. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental.  *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528

U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman*, 221 F.3d at 423.

Blanchard alleges that he "was treated differently because he was a prisoner." (Doc. 33 ¶ 117). Blanchard does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). Therefore, Blanchard's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory. To survive under the class-of-one theory, Blanchard must establish that he has been treated differently from similarly situated inmates, that the Defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. *Phillips*, 515 F.3d at 243. When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations ... that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] ... were treated in a dissimilar manner" will not survive dismissal. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 354-55 (3d Cir. 2005); *see also Twombly*, 550 U.S. at 561) (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss). Instead, plaintiffs must identify similarly situated individuals and allege "occasions

or circumstances" of differential treatment.  *Young*, 160 F. App'x at 266; *see also Twombly*, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

Blanchard generally states that Defendants violated his equal protection rights.  He does not identify any other inmates who were similarly situated to him that were treated differently by Defendants.  The allegations in the amended complaint are simply "bald assertions" that do not allege "occasions and circumstances" of differential treatment. *Young*, 160 F. App'x at 266.  Because Blanchard has not stated the existence of similarly situated individuals sufficient to support a class-of-one claim, the equal protection claim fails.

### 6.    Medical Malpractice

Blanchard never delineates his state-law claims of medical malpractice, although it appears that he intends to do so.  (*See* Doc. 33 ¶¶ 114, 116).  Because the Court is dismissing the section 1983 claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Blanchard's remaining state-law claims of medical negligence.  *See* 28 U.S.C. § 1367(c)(3).

### 7.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Blanchard leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114

33

(3d Cir. 2002).  Since Blanchard's claims are factually and legally flawed and he has

previously been granted leave to amend, allowing further leave to amend would be both

futile and inequitable.  *See Grayson*, 293 F.3d at 108; *see also Jones v. Unknown D.O.C.*

*Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has

already had two chances to tell his story…giving him further leave to amend would be

futile.").

## IV.    Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The John and Jane Doe Defendants were named in the amended

complaint that was filed on June 1, 2023, and, to date, have not been identified or served in

this case.  The Court must engage in a two-step process in determining whether to dismiss

the unidentified, non-served Defendants or grant Blanchard additional time to effect service.

"First, the district court should determine whether good cause exists for an extension of

time.  If good cause is present, the district court must extend time for service and the inquiry

is ended.  If, however, good cause does not exist, the court may in its discretion decide

whether to dismiss the case without prejudice or extend time for service."  *Petrucelli v.*

*Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules.  *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place."  *Id.*  Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service.  *Id.*

In the present matter, Blanchard failed to establish good cause.  On July 25, 2023, the Court ordered Blanchard to provide additional information concerning the identity of the John and Jane Doe Defendants and warned him that failure to comply may result in the dismissal of his claims against those Defendants pursuant to Rule 4(m).  (Doc. 43 ¶ 4).  Blanchard failed to do so, and his *pro se* status is not good cause to excuse his failure to timely identify or serve these Defendants.  *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004).  Based upon the lack of any explanation for her failure to adhere to the requirements of Rule 4, the Court finds that Blanchard failed to establish good cause.

If a plaintiff cannot show good cause for his or her failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time.  *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m).  It is Blanchard's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.

(*See* Doc. 43 ¶¶ 3-4) (advising Blanchard that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Blanchard's lack of good faith effort to identify or serve the John and Jane Doe Defendants, despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the unidentified, non-served Defendants will be dismissed from this action.

## V.     Conclusion

The Court will grant the DOC Defendants' motion (Doc. 41) in its entirety. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: February ____, 2024